UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN NOVIE and MARINA NOVIE,

                    Plaintiffs,

       - against -                     10-CV-9436 (CS)

VILLAGE OF MONTEBELLO, its Board of Trustees, its   **OPINION AND ORDER**
Planning Board, and its Engineer, Attorney(s), and
Building Inspector,

                    Defendants.

Appearances:
Michael D. Diederich, Jr.
Brigitte M. Gulliver
Law Office of Michael Diederich, Jr.
Stony Point, New York
*Counsel for Plaintiffs*

Mary E. Brady Marzolla
Feerick Lynch MacCartney, PLLC
South Nyack, New York
*Counsel for Defendants*

Seibel, J.

      Before this Court are Plaintiffs' Motion for Leave to file a Second Amended Complaint

pursuant to Federal Rule of Civil Procedure 15(a)(2), (Docs. 39, 48-50), and Defendants' Motion

to Dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), (Doc. 16).  For the

following reasons, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART, and

Defendants' Motion is GRANTED.

I.    **Background**

A.    Factual Background

For the purposes of the present Motions, the Court accepts as true the facts (but not the conclusions) as stated in Plaintiffs' Amended Complaint ("AC"), (Doc. 11), and Plaintiffs' proposed Second Amended Complaint ("SAC"), (Doc. 49).[1]

1.    Plaintiffs' Property

Plaintiffs, a married couple, and their twins, born in 2008, are residents of the Village of Montebello (the "Village"), Town of Ramapo. (SAC ¶¶ 1, 11, 13.) In 2004,[2] Plaintiffs purchased a piece of property (the "Property") in the Village that is approximately 40,000 square feet in size and has a single-family house on it. (*Id.* ¶¶ 11, 14, 16, 19.) The house was built in 1972, and Plaintiffs believe that at that time, the rear portion of the Property consisted of a backyard lawn without trees. (*Id.* ¶ 22.) Over the course of the next several decades, ash and elm trees grew in the backyard, "eventually becoming mature trees which, as a result of Dutch Elm Disease and other diseases and blights, became sick and dying in recent years." (*Id.* ¶ 23.) By 2009, "virtually all the trees in Plaintiffs' back yard were crowded together, spindly, and dead, dying, vine-covered or otherwise in poor health." (*Id.* ¶ 24.) Plaintiffs believe that this "'untamed' rear yard" has created problems such as "unmanageable undergrowth and brush, and with this the obvious likelihood of animal intruders including snakes[,] . . . black widow spiders, skunks, raccoons, rodents, bats and deer, and with the mammals, the possibility of rabies and the increasing threat of deer ticks carrying Lyme Disease." (*Id.* ¶ 26.)

---

[1] Except where noted, the factual allegations set forth in the AC and the SAC are the same; I cite to the SAC only for the sake of simplicity.

[2] Plaintiffs' SAC is inconsistent as to whether they purchased the property in 2003, (*see* SAC 1), or 2004, (*see* SAC ¶ 11).

2.    The Village Tree Preservation Law

This case concerns provisions of the Village's Tree Preservation and Landscape

Maintenance Law (Chapter 176 of the Village Code) (the "Tree Law").[3]  The relevant portions of

the law are reproduced below:

### § 176-6.  Tree removal; permit; Planning Board review; licensing of contractors; fees.

A. Prohibited activities. Except as permitted herein, no person shall do or cause to be done by others, either purposely, carelessly, or negligently, any of the following acts upon privately owned property within the Village of Montebello:

(1) Cut, destroy, remove, or substantially injure any tree except as may be permitted in Subsection B, permitted activities, below.

(2) Place or maintain upon the ground any substance or impervious surface which would impede the free access of air and water to the roots of any tree.

(3) Apply any substance to any part of a tree, including the roots, with the intent to injure or destroy the tree.

B. Permitted activities. Notwithstanding the restrictions above, the following activities shall be permitted:

(1) The cutting, pruning, or trimming of trees in a manner that is not harmful to the health of the tree.

(2) The cutting, destruction or removal of trees which are dead or imminently dead or which endanger public safety and pose imminent peril, such condition confirmed by the Village Engineer, or his or her designee as chosen by the Village Board of Trustees, with the assistance of an arborist if the Village Engineer or designee believes same necessary to facilitate making an informed decision in the circumstances, in the form of a permit issued after application and after payment of a permit fee set by said Board by resolution, and prior to cutting or removal. Application for this permit shall include a map of the property identifying the location of said tree or trees and supporting evidence (e.g., photographs, report of an arborist) indicating the reason for removal. Any person who cuts, destroys or removes trees for said purpose without first obtaining a permit because he or she believed that public safety was endangered or an

---

[3] General Code of the Village of Montebello, New York, Ch. 176, *available at* http://www.ecode360.com/8769464.

imminent peril posed shall submit a written application to the Planning Board made within five days after the cutting, destruction or removal of trees has occurred, except that the period is extended to 20 days if the removal occurs due to an extreme weather condition, such as a hurricane, which is known to have damaged a significant number of trees in the Village. In the case of removal without a permit, independent proof (such as a photograph, police report or arborist's certification) is required in accordance with § 176-6D, Exceptions, in order to obtain approval from the Planning Board excepting said person from the regulations contained herein. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant. Removal of trees for nonimminent perils shall be governed by § 176-6B(4).

(3) Upon receipt of a permit after application to the Village Engineer or other designee of the Village Board and payment of a permit fee set by said Board by resolution, the cutting or removal of not more than one tree per 10,000 square feet of lot area during any two-year period but, irrespective of lot area, in no event removal of more than eight trees per lot in any two-year period, or 12 trees in any six-year period, unless said removal is in accordance with a site or subdivision plan duly approved by the Planning Board. [See Subsection B(6), below.] In the latter case, trees shall have been identified on said plans, and no additional trees shall be cut without approval of the Planning Board. For the purpose of this provision, "year" shall be construed to be the calendar year.

. . .

C. Excluded activities. The provisions of this chapter shall not apply to activities involving trees within the public rights-of-way or publicly owned properties.

D. Exceptions. Upon written application to the Planning Board, and after payment of a permit fee set by the Board of Trustees by resolution, the Planning Board may, by resolution, grant an exception from any of the requirements of this chapter. The decision by the Planning Board shall be made within 30 days of receipt of the request or at the next regularly scheduled Planning Board meeting if not within 30 days. The Planning Board may grant such exceptions from the requirements of this chapter as may be reasonable and within the purposes and intent of this chapter if the enforcement of one or more of the provisions is impractical or will exact undue hardship because of peculiar conditions pertaining to the property in question but, in so granting, may require that a compensatory planting or compensatory payment be made. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant.

4

E. Planning Board review standards and fees. Where an application is submitted to the Planning Board to remove tree(s), said permit may be granted only for the following reasons and under the following conditions:

(1) Where the location of an existing tree or trees provides no alternative but to place a proposed structure outside the permitted building setbacks, and only if a said tree or trees to be removed are replaced on the property as a compensatory planting, or a compensatory payment is made to the Tree Fund, as directed by the Planning Board, to the extent removal exceeds the number of trees which may be removed as of right for the subject lot per Subsection B(3).

. . .

(4) Nonimminent peril.

(a) At the discretion of the Planning Board, and upon the express written finding of an arborist having ISA certification or having other comparable credentials acceptable to the Planning Board or other expert opinion acceptable to the Planning Board, that the proposed removal will alleviate a nonimminent peril to public safety or will likely not result in or cause, increase or aggravate any of the following conditions:

[1] Impaired growth or development of the remaining trees or shrubs on the property of the applicant or upon adjacent property;

[2] Soil erosion sediment or dust, drainage or sewerage problems or any other reasonably foreseeable dangerous or hazardous condition;

[3] Have a significant adverse impact upon existing biological and ecological systems;

[4] Significantly affect noise pollution by increasing noise levels to such a degree that a public nuisance may be anticipated or by significantly reducing the noise-dampening effect of vegetation near sensitive noise receptors;

[5] Significantly affect wildlife habitat available for wildlife existence and reproduction by causing emigration of wildlife to adjacent or associated ecosystems; or

[6] Significantly denude a visible buffer between adjacent properties.

(b) Such certification does not represent relief from the independent requirement that a compensatory planting be made elsewhere on the property or a compensatory payment be made to the Tree Fund, as directed by the Planning Board, to the extent removal exceeds the number of trees which may be removed as of right for the subject lot per Subsection B(3). The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant.

(5) The fees for an application to the Planning Board for tree removal shall be $250 or other such fee as set from time to time by resolution of the Village Board. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant.

. . . .

### § 176-7. Penalties for offenses.

A. The Village Engineer or other designee of the Village Board shall determine compliance with this chapter, and any person violating any of the terms or provisions of this chapter or refusing to comply with the rules and regulations of this chapter shall, upon conviction, be subject to a fine not exceeding $250 for each offense. Each tree that is cut or damaged without appropriate approval from a Village agency shall constitute a single offense, up to a maximum penalty of $10,000 per lot.

. . .

C. In addition to being subject to prosecution and fining, any person having violated this chapter shall also be referred to the Planning Board for the purpose of developing a tree remediation plan, showing the existing and proposed landscaping conditions on the premises in question, and which shall be designed to mitigate the effects of the offense, which shall be known as the "compensatory planting plan" or, if the Planning Board approves in lieu thereof, the making of a compensatory payment to the Tree Fund (See Subsection D below.) The Planning Board may also require such remedial or protective measures to be undertaken as may be necessary to protect the balance of the original landscaping, such as, but not limited to, the use of snow fencing, chain link fencing, or other protective measures. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating the violation and recommending a remediation. The fees charged to the Village by such consultants shall be paid by the violator.

D.  In addition to any penalty, the violator will be required to effectuate a compensatory planting by replacing in kind each and every tree removed, cut down or destroyed in violation of this chapter. If a tree was so large and mature that it cannot be replaced, the Planning Board may require the planting of multiple trees instead, based on the sole determination of the Planning Board of the number, species and size of trees necessary to meet the objectives of this chapter. In the alternative, in appropriate circumstances where the planting of additional trees is impractical in the judgment of the Planning Board, it may accept compensatory payment to the Tree Fund in lieu of planting as it may direct or as it may approve upon the request of the violator. No certificate of occupancy shall be issued for new construction on the property on which occurred any violation of this chapter unless and until the provisions of this subsection have been complied with.

E.  Where a tree of any size that is removed, cut down or destroyed is in a conservation easement or conservation area designated on a plan approved by the Planning Board, fines may be doubled.

F.  Whenever the Village Engineer or designee as determined by the Village Board shall determine that any activity is being conducted in violation of this chapter, then the Village Engineer shall request that the Building Inspector notify the owner of the property, the owner's agent, or the person performing the work to suspend and halt work. Such direction by the Building Inspector (a stop-work order) shall be in writing and delivered to the owner, the owner's agent, or the person performing the work or affixed to the site. Such stop-work order shall state the reasons therefor and the conditions under which the work may be resumed.

. . . .

### 3.    The 2009 Cutting

In the spring of 2009, Plaintiffs, "without realizing that there existed a Village regulation pertaining to the cutting of trees," cut down three dead trees and three dying trees on their Property (the "2009 Cutting"). (SAC ¶ 28.) The Village brought charges against Mr. Novie for violation of the Tree Law in connection with the 2009 Cutting. (*See* Marzolla Aff. Ex. D.)[4] On or around February 26, 2010, Mr. Novie and the Village entered into a Civil Compromise Agreement, whereby Mr. Novie agreed to pay the Village $250 and "follow proper procedures

---

[4] "Marzolla Aff." refers to Attorney Affidavit [of Mary E. Brady Marzolla].  (Doc. 17.)

with regard to any improvements/tree removal . . . concerning [his] property," and the Village

agreed to dismiss the charges against Mr. Novie. (*Id.*; *see* SAC ¶ 31.)

                4.    <u>The 2010 Cutting</u>

       In 2010, Plaintiffs applied for a permit to cut fifteen dead or dying ash and elm trees and

three healthy trees. (SAC ¶¶ 32, 50; Marzolla Aff. Ex. E, at 1 (Plaintiffs' Tree Removal Permit

Application, received by Village July 17, 2010, seeking permission for removal of fifteen dead

ash and elm trees and three healthy trees, two of which were oak trees).) Plaintiffs state that they

"received the permit back 'approved,' yet with ambiguous handwriting," (SAC ¶ 33), and

maintain that "the Village Engineer did not expressly 'deny' any portion of Plaintiffs'

application to remove fifteen dead trees,"[5] (*id.* ¶ 53). In August 2010, Plaintiffs had a contractor

cut dead or dying trees (the "2010 Cutting"). (*Id.* ¶¶ 34, 54.) Plaintiffs allege that after the

contractor began work, "a 'consulting engineer' of the Village suddenly appeared, intruded onto

Plaintiffs' property without permission, . . . and instructed Plaintiff[s'] contractor to cease work."

---

[5] It is not clear what Plaintiffs find "ambiguous" about the handwriting on the approved permit application. The handwriting states:

      -Lot size: 37,461 S.F.

      -(3) trees may be removed as of right, 176-6B(3)

      -Total of (14) trees marked for removal

      -(1) tree is located in 20' san. sewer easement (not allowed).

      (*)-Inspection revealed: (8) trees may be removed per 176-6B(2), dead or imminently dead. Also, (3) trees may be removed as of right for a total of (11) trees allowed for removal.

(Marzolla Aff. Ex. E, at 3.) In fact, Plaintiffs' assertion that the handwriting was "ambiguous" appears to be disingenuous, given that Plaintiffs' Brief on Appeal in a separate state action before the Supreme Court of the State of New York Appellate Term, Second Department, ("Plaintiffs' Appellate Brief"), attached as Exhibit C to Defendants' Supplemental Briefing ("Ds' Supp."), (Doc. 46), states in plain terms that the "hand-written language . . . authorized the removal of 3 trees less than [Plaintiff] Novie had requested. No reason was given by the Village for the reduced number." (Ds' Supp. Ex. C, at 2.) It is also not clear why Plaintiffs now argue that the Village did not expressly deny any portion of their application, given their understanding that the Village "authorized the removal of 3 trees less than [Plaintiff] Novie had requested." (*Id.*)

(*Id.* ¶ 36.) Shortly thereafter, the Village filed a summons and complaint in the Ramapo Justice Court accusing Mr. Novie[6] of violating the Tree Law[7] by cutting three more trees than had been permitted. (*Id.* ¶¶ 37, 57.) Defendants also allegedly "coerced Plaintiffs into paying $250 to the Village Planning Board," "[n]otwithstanding that the only trees cut on Plaintiffs' property in 2010 were either dead or dying," and "invoiced Plaintiffs for approximately $2,000 in alleged contractor services."[8] (*Id.* ¶¶ 55-56.) Plaintiffs further allege that if they are found to have violated the Tree Law, the Village will be "allow[ed] . . . to place demands upon [them] which could exceed tens of thousands of dollars." (*Id.* ¶ 42.)

    B.   <u>Procedural History</u>

       Plaintiffs filed their Complaint in this action on December 20, 2010. (Doc. 1.) At a conference before this Court on March 24, 2011, the parties discussed Plaintiffs' request to amend the Complaint to include facts regarding a new invoice issued to Plaintiffs by the Village, (*see* Docs. 2, 3, 6), and address numerous potential deficiencies in Plaintiffs' Complaint, many of which were raised by Defendants in their pre-motion letter, (Doc. 8). The Court permitted Plaintiffs to amend their Complaint, (*see* Minute Entry Mar. 24, 2011), and Plaintiffs filed their AC on June 6, 2011, (Doc. 11), asserting a number of facial and as-applied constitutional claims, as well as other federal and state law claims. On October 12, 2011, Defendants filed the instant Motion to Dismiss. (Doc. 16.)

---

[6] Only Mr. Novie was named as a Defendant in the Justice Court action, but for the sake of simplicity, I will use the term "Plaintiffs" to refer to the sued party in that action.

[7] Plaintiffs' SAC adds that the "Justice Court code enforcement proceeding was dismissed on January 31, 2012. The Justice Court found the Tree Law to be unconstitutional." (SAC ¶ 38.)

[8] The SAC adds that the Village has since "sought additional consultants' fees from the Plaintiffs, for their alleged yet unadjudicated violation of the Village's Tree Law." (*Id.* ¶ 41a.)

On January 31, 2012, Plaintiffs wrote to inform me that the Ramapo Justice Court dismissed the code enforcement matter against Plaintiffs and found the Tree Law to be unconstitutional. (Docs. 29, 30.) On February 7, 2012, Plaintiffs wrote this Court again, mentioning that the Village planned to appeal the Justice Court's decision, taking issue with the Village's assertion of a lien for consultant fees on the Property, and asking the Court to "accept this letter application as an informal motion . . . to supplement the complaint with newly arising facts." (Doc. 32.)

At a conference on March 26, 2012, I allowed Plaintiffs to make a formal motion for leave to amend the AC and indicated that I would consider that Motion at the same time as Defendants' pending Motion to Dismiss. (*See* Minute Entry Mar. 26, 2012.) I also told Plaintiffs, however, that they should not attempt to refine the material already in the AC or add new claims arising from old facts; rather, they could only pursue leave to amend to add new claims arising from new facts and to drop claims that they believed to be meritless.

On May 17, 2012, Plaintiffs filed their Motion for Leave to Amend, (Doc. 35), but it consisted solely of the SAC and was unaccompanied by a memorandum of law or any other discussion of the legal standards pertaining to a motion for leave to amend. Accordingly, I gave them an opportunity to renew their Motion with the required documents and analysis. (*See* Doc. 36.) In that endorsement, I reminded counsel that any proposed second amended complaint could only add new claims arising from new facts, not refine old claims or add new claims arising from old facts. (*Id.*) Plaintiffs filed their renewed Motion for Leave to Amend the AC on June 1, 2012. (Doc. 39.)

## II.   **Motion for Leave to Amend**

Plaintiffs' SAC seeks to incorporate additional facts and claims and to withdraw certain claims.[9]   I will address each proposed change in turn.

### A.   Legal Standard

Leave to amend a complaint should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.   Changes in the Second Amended Complaint

#### 1.   Additional Facts

Plaintiffs have added facts in the SAC concerning the outcome of the Justice Court code enforcement proceeding and the Village's subsequent appeal of the Justice Court's decision. (*See* SAC ¶ 38.)  Because this decision was rendered in January 2012, well after the AC was filed, and is relevant to the current proceedings, and because adding these facts would not prejudice Defendants, the addition of these facts is appropriate.  Plaintiffs also seek to incorporate facts concerning additional consultants' fees imposed on them by the Village

---

[9] In comparing the AC with the SAC, I rely on the "Tracked Changes" version of the SAC submitted by Plaintiffs with their Motion for Leave to Amend.  (Doc. 49.)

subsequent to the Justice Court's decision. (*See id.* ¶¶ 41a-c, 42.) For the same reasons, these facts may be incorporated into the SAC.

Plaintiffs next attempt to incorporate new facts and assertions supporting their claim of unequal treatment based on Marina Novie's orthodox Jewish religion. (*See id.* ¶¶ 106a-d.) None of these facts are alleged to have occurred after the filing of the AC, and it does not appear to the Court that they postdate the AC. Accordingly, these statements may not be incorporated into the SAC. Similarly, Plaintiffs also attempt to incorporate new facts and assertions in support of their challenge to the provisions of the Tree Law that allow the Village to pass on the costs of consultants to residents (the "Consultant Fee Regulations"). (*See id.* ¶¶ 108a-j.) Again, there is no indication as to why these allegations could not have been included in the AC. None of them appears to concern conduct that postdated the AC, except paragraph 108i which asserts that the Village "may be considering" action with regard to a wholly unrelated matter – permission to remove small rocks and debris from Plaintiffs' Property. (*Id.* ¶ 108i.) Rather, the proposed language consists of general, undated assertions concerning Defendants' practices pursuant to the Consultant Fee Regulations. Accordingly, these assertions may not be included in the SAC, because, to the extent they are even relevant to this action, they do not constitute new facts or new claims.[10]

### 2.    Additional Claims

Plaintiffs seek to incorporate two new claims into the SAC. First, they assert a claim pursuant to the Americans with Disabilities Act ("ADA") in connection with the Village's refusal to let Plaintiffs remove oak trees from their Property and the Village's demand that

---

[10] In any event, for reasons discussed below – namely, the propriety of abstention in this matter – amendment to add the new facts discussed above would be futile.

Plaintiffs plant several new oak trees as replacement trees. (*See id.* ¶¶ 121-28.) Plaintiffs'

request to add an ADA claim is denied, because the facts on which they base this claim appear to

predate the AC or at the very least are not alleged to have occurred after the AC.  For example,

the statements that "Plaintiffs requested removal of one of their oak trees" but the Village denied

that request appears to refer to the application relating to the 2010 Cutting, (*see* Marzolla Aff.

Ex. E (request to remove "2 oak" "due to allergy of home owner")),[11] and the claim that the

Village required them to plant new oak trees is undated.  In any event, even if the activity did

postdate the AC, because this claim appears to be entirely without merit,[12] amendment to add it

would be futile.  Accordingly, this claim may not be included in the SAC.

Similarly, Plaintiffs seek to add a new claim under the New York Constitution based on

the same facts supporting their existing First Amendment claim. (*See* SAC 21.)  Again, because

this attempt explicitly contravenes my order not to refine or supplement the existing claims based

on old facts, Plaintiffs are not permitted to add this claim.[13]

---

[11] If Plaintiffs are indeed referring to their July 2010 Tree Removal Permit Application when they say the Village denied them permission to remove oak trees, it is not clear why the permission they received to remove three trees as of right could not include the oak trees.  If Plaintiffs are referring to some other request to remove oak trees from their Property, they have failed to give any specifics concerning such request.

[12] For one thing, Plaintiffs' claim appears to be meritless because their SAC provides no facts indicating why Mr. Novie is a "qualified individual with a disability," *see* 42 U.S.C. § 12102 (defining "disability"); *id.* § 12131(2) (defining "qualified individual with a disability"), apart from stating that he is allergic to oak pollen, *see Martinez v. RZB Fin. LLC*, No. 10-CV-4214, 2010 WL 4449031, at *4 (S.D.N.Y. Nov. 5, 2010) (dismissing ADA claim due to failure to allege a disability because "[t]he most specific allegation is that [plaintiff's] disability includes a severe allergy to mold") (internal quotation marks omitted).  Nor does it appear that Plaintiffs ever sought an accommodation based on Mr. Novie's condition. *See Baker v. N.Y. State Dep't of Envtl. Conservation*, No. 10-CV-1016, 2012 WL 2374699, at *3 (N.D.N.Y. June 22, 2012) (dismissing reasonable accommodation claim because plaintiffs never sought accommodation and noting that plaintiffs' papers were "devoid of any controlling legal authority which even suggests that an accommodation request . . . is unnecessary").

[13] In any event, as stated above, amendment to add this claim would be futile, because if added, I would dismiss it on jurisdictional grounds, as discussed below.

### 3. Withdrawn Claims

The AC contains a Fair Housing Act claim. (*See* AC ¶¶ 109-19.) In their Memorandum of Law in opposition to Defendants' Motion to Dismiss, Plaintiffs expressly withdrew this claim. (Ps' Mem. 15.)[14] It is not clear whether the inclusion of this claim in the SAC was an oversight. (*See* SAC ¶¶ 109-20, 127.) To the extent Plaintiffs seek to amend the AC to add the claim back in after thinking better of withdrawing it, they are not permitted to do so. As stated above, I permitted Plaintiffs to seek leave to amend to add new facts and claims, not to refine and rethink their old claims.

Finally, Plaintiffs wish to withdraw their Commerce Clause claim – which claim was already withdrawn in their Memorandum of Law in opposition to Defendants' Motion to Dismiss, (Ps' Mem. 15) – and their Fourth Amendment search and seizure claim, and are permitted to do so.

## III. Motion to Dismiss

### 1. Documents the Court may Consider

When deciding a motion to dismiss, the Court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy*, 482 F.3d at 191; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary

---

[14] "Ps' Mem." refers to Plaintiff's [*sic*] Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (Doc. 24.)

judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration and internal quotation marks omitted).

There are circumstances, however, under which it is appropriate for a court to consider documents outside of the complaint on a motion to dismiss. For example, when deciding a motion to dismiss, the Court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). If a document outside of the complaint is to form the basis for dismissal, however, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134.

Furthermore, it is improper for a court to consider declarations and affidavits on a motion to dismiss. *See Ramasamy v. Essar Global Ltd.*, No. 11-CV-3912, 2012 WL 1681763, at *2 (S.D.N.Y. May 8, 2012) ("sworn affidavit by plaintiff" is "material that could not ordinarily be considered on a Rule 12(b)(6) motion to dismiss"); *Wachtel v. Nat'l R.R. Passenger Corp.*, No. 11-CV-613, 2012 WL 292352, at *2 (S.D.N.Y. Jan. 30, 2012) (declining to consider plaintiff's affidavit attached to opposition to motion to dismiss because "the Court cannot consider affidavits in ruling on a motion to dismiss"); *Valez v. City of N.Y.*, No. 08-CV-3875, 2008 WL 5329974, at *3 n.5 (S.D.N.Y. Dec. 16, 2008) (noting that it would be improper to consider

plaintiff's affidavit on motion to dismiss); *cf. Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
848 F.2d 24, 25 (2d Cir. 1988) ("If the district court considered [plaintiff's] affidavit in disposing
of the Rule 12(b)(6) motion, it erred in failing to convert the motion to one for summary
judgment . . . .").

        a.      <u>Attachments to Defendants' Motion</u>

Defendants have submitted the following documents with their Motion to Dismiss:

- Plaintiffs' Complaint and AC, (Marzolla Aff. Exs. A-B);

- The text of the Tree Law, (*id.* Ex. C);

- The Civil Compromise Agreement, signed in February 2010, between Brian
  Novie and the Village settling the charges brought against Mr. Novie in
  connection with the 2009 Cutting, (*id.* Ex. D);

- Plaintiffs' 2010 Tree Removal Permit Application signed on July 15, 2010 and
  the Village's August 2, 2010 approval of that application, (*id.* Ex. E);

- Signed copies of an Agreement to Pay Professional Consulting Fees – one signed
  by Marina Novie on July 15, 2010, and one signed by Brian Novie on August 17,
  2010, (*id.* Exs. F-G);

- A letter dated August 17, 2010 from Martin Spence of Spence Engineering (the
  Village Engineer) to the Village Clerk notifying the Clerk's Office that Spence
  Engineering performed an inspection of Plaintiffs' property on August 10, 2010
  and found that Plaintiffs had cut down fourteen trees – three more than their
  permit allowed, (*id.* Ex. H);

- Minutes of a Village Planning Board meeting on September 14, 2010, which
  Plaintiffs attended, and at which the Planning Board discussed Plaintiffs'
  application for an exception to the Tree Law with regard to the 2010 Cutting.
  Attached to the Minutes are several documents that were presented to the
  Planning Board at that meeting: the minutes from the August 31, 2010
  Community Design Review Committee ("CDRC") meeting; documents
  concerning an unrelated subdivision (the "Fried" subdivision); a memo from
  Martin Spence regarding Plaintiffs' Property which includes a tree remediation
  plan for the Property; and a letter to the Planning Board from Al Rubin – the
  Chairman of the Planning Board who recused himself from the matter because he
  is Plaintiffs' neighbor – suggesting that the Planning Board "provide[] some
  environmental message" to Plaintiffs that excess cuttings "will not be tolerated,"

(*id.* Ex. I);

- Minutes from the Planning Board meeting of November 9, 2010 (including CDRC Minutes from October 26, 2010 and an attachment concerning an unrelated issue), (*id.* Ex. J);

- The text of the Village's regulations concerning consulting fees (Chapter 65 of the Village Code), (Marzolla Reply Aff. Ex. A).[15]

All of these documents except the August 17, 2010 letter from the Village Engineer will be considered for the purposes of these Motions. More specifically, I may take judicial notice of the Tree Law and Consultant Fee Regulations, as they are public documents. *See Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011). The Tree Removal Permit Application is incorporated by explicit reference into the SAC, (*see, e.g.*, SAC ¶ 32-33), and Plaintiff has certainly relied on it in framing the SAC, as it goes to the heart of this lawsuit. The Civil Compromise Agreement appears to be referenced in paragraph 31 of the SAC, and because Plaintiffs take issue with the fees and penalties charged by Defendants in connection with the Tree Law, it is integral to the SAC and Plaintiffs may be said to have relied on it in framing the SAC. The Agreements to pay consulting fees are likewise integral to the SAC given that some of Plaintiffs' claims are premised on the Village's imposition of consulting fees. (*See, e.g., id.* ¶¶ 157-61.) Finally, the minutes of the September 14, 2010 and November 9, 2010 Planning Board meetings will also be considered because they are public documents[16] of which I may take judicial notice for the fact that they exist, but not for the truth of the matters asserted therein.[17]

---

[15] "Marzolla Reply Aff." refers to the Attorney Affidavit [of Mary E. Brady Marzolla]. (Doc. 21.)

[16] All minutes from meetings of the Village's Planning Board are available to the public at http://www.villageofmontebello.com/Planning%20Board%20Minutes.html (last visited Aug. 14, 2012).

[17] For example, to the extent the November 9th minutes are offered to prove that Plaintiffs did not attend the meeting, they are being offered for the truth of their contents, a purpose for which I may not consider them. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Further, I need not decide whether consideration of

*See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (On 12(b)(6) motion to dismiss, "[t]he court may consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint.") (alteration and internal quotation marks omitted); *id.* ("[A] court should generally take judicial notice 'to determine what statements the documents contain[,] not for the truth of the matters asserted.'") (alterations omitted) (quoting *Kramer*, 937 F.2d at 774).

In contrast, the letter from Martin Spence to the Village Clerk's Office will not be considered because it is not clear that Plaintiff had knowledge of this document or relied on it in framing the SAC. (*But see* SAC ¶ 36 ("'consulting engineer' of the Village . . . intruded onto Plaintiffs' property").) Accordingly, Exhibits A, B, C, D, E, F, G, I, and J to the Marzolla Affidavit and Exhibit A to the Marzolla Reply Affidavit will be considered.[18] Exhibit H to the Marzolla Affidavit will not be considered.

      b.    <u>Attachments to Defendants' Supplemental Briefing</u>

In response to the Court's request for supplemental briefing regarding the concurrent state court proceeding, (Doc. 44), Defendants attached to their letter brief: (1) transcripts of the proceedings in the Ramapo Justice Court on November 22, 2011 and January 31, 2012; (2) Plaintiffs' motion to dismiss filed with the Ramapo Justice Court and the attachments thereto; and (3) both parties' briefs on appeal of the Justice Court's decision to the New York Supreme Court Appellate Term, Second Department. (*See* Ds' Supp. Exs. A-F.) I may take judicial notice of all of these materials – for the fact that they exist and the facts of what is in them, but

---

the documents attached to the Planning Board minutes is proper because those documents have no effect on my decision on the pending Motions.

[18] Plaintiffs have not challenged the authenticity or accuracy of any of these documents. *See Faulkner*, 463 F.3d at 134.

not for their truth – because they are public documents. *See Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (courts can "look to public records, including complaints filed in state court, in deciding a motion to dismiss").

      c.    Attachment to Plaintiffs' Opposition to Defendants' Motion to Dismiss

      Plaintiffs have submitted only one document in conjunction with their opposition to Defendants' Motion – a personal Affidavit by Plaintiffs.[19] (Doc. 25.) I will not consider this document for the purposes of deciding Defendants' Motion because affidavits are not properly considered on a motion to dismiss. *See Ramasamy*, 2012 WL 1681763, at *2; *Wachtel*, 2012 WL 292352, at *2.

      2.   Motion to Dismiss Standard

      "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

---

[19] Plaintiffs' submission is technically not an affidavit because it is not sworn before a notary. *See* Black's Law Dictionary (9th ed. 2009) (An affidavit is "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."); *see Azkour v. Little Rest Twelve, Inc.*, No. 10-CV-4132, 2012 WL 402049, at *3 n.1 (S.D.N.Y. Feb. 7, 2012). Even if I were to construe the affidavit as a declaration pursuant to 28 U.S.C. § 1746, it would still not be considered at this stage. *See Mugno v. Societe Internationale de Telecomm. Aeronautiques, Ltd.*, No. 05-CV-2037, 2007 WL 316572, at *7 n.7 (E.D.N.Y. Jan. 30, 2007) (declining plaintiff's request for court to consider "declarations of various persons" on a Rule 12(b)(6) motion to dismiss).

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

3.    Discussion

I will deem a SAC conforming to my decision above to have been filed and will address

my discussion below to such a document.

a.    Abstention

Defendants argue that this Court should abstain from deciding this case under the

doctrine laid down in *Younger v. Harris*, 401 U.S. 37 (1971), (Ds' Mem. 5-6),[20] which generally

prohibits "federal courts from enjoining ongoing state proceedings." *Hartford Courant Co. v.*

*Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004).  "Although the *Younger* abstention doctrine was

born in the context of state criminal proceedings, it now applies with equal force to state

---

[20] "Ds' Mem." refers to Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Complaint. (Doc. 18.)

administrative" and civil proceedings. *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986)). "*Younger* abstention is required when three conditions are met:  (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Id.*; *accord Parent v. New York*, No. 11-CV-2474, 2012 WL 2213658, at *2 (2d Cir. June 18, 2012) (summary order). "Despite the strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 54).

The first two requirements of *Younger* are clearly met here.  There is an ongoing proceeding in state court – the appeal from the Town Justice Court to the Second Judicial Department of the New York Supreme Court Appellate Term.  *See Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995) (requirement of ongoing state proceeding met when plaintiff faced ongoing criminal prosecution in town court); *Sendlewski v. Town of Southampton*, 734 F. Supp. 586, 590-91 (E.D.N.Y. 1990) (abstention proper where federal action would interfere with proceedings in town justice court and state supreme court).

Second, the state proceeding implicates an important state interest insofar as it concerns a town land use regulation akin to a zoning requirement.  *See Donangelo, Inc. v. Town of Northumberland*, No. 03-CV-934, 2005 WL 681494, at *2 (N.D.N.Y. Mar. 24, 2005) (regulating zoning and land use and protecting health of citizens and environment are "clear[ly]" state interests "important enough to warrant abstention"); *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 590 (E.D.N.Y. 1997) (zoning regulation is important state

21

interest); *Sendlewski*, 734 F. Supp. at 591 (action in town justice court to enforce town's zoning

and land use regulations implicates important state interest); *cf. id.* ("In determining the

substantiality of the state's interest in its proceedings, a court must not look narrowly to the

state's interest in the outcome of the particular case, but rather, to the importance of the generic

proceedings to the state.") (alteration, emphasis, and internal quotation marks omitted).

Furthermore, the importance of the state interest here is reinforced by the fact that the Village

chose to enforce the Tree Law through a criminal proceeding against Mr. Novie. (SAC ¶ 73

(Village prosecuting criminal code enforcement case against Mr. Novie.) *See Wandyful*, 959 F.

Supp. at 590 (relying on Ninth Circuit case that found that where city had option to proceed

either by civil or criminal enforcement of municipal ordinance, use of latter "demonstrates the

importance of the underlying state interest") (internal quotation marks omitted); *Sendlewski*, 734

F. Supp. at 590 ("importance of the state's interest may be demonstrated if the civil action is

closely related to a criminal proceeding").

      With regard to the third *Younger* prong, "the relevant question . . . is whether the state's

procedural remedies *could* provide the relief sought[,] not whether the state *will* provide the

constitutional ruling which the plaintiff seeks." *Glatzer v. Barone*, 394 F. App'x 763, 765 (2d

Cir. 2010) (summary order) (emphasis in original) (alterations and internal quotation marks

omitted). Where the constitutional claims in the state and federal actions are different, however,

abstention is inappropriate, as "the state proceeding [would] not afford the federal plaintiff an

adequate opportunity for judicial review of his or her federal constitutional claims." *Hartford

Courant*, 380 F.3d at 101 (emphasis and internal quotation marks omitted). "[I]mportantly,"

however, "under *Younger*, any uncertainties as to the scope of state proceedings or the

availability of state remedies are generally resolved in favor of abstention." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 77-78 (2d Cir. 2003).

I find that the third *Younger* prong is met and abstention is appropriate in this case because the state proceeding pending before the Appellate Term affords Plaintiffs an opportunity for review of their federal claims. In their motion to dismiss the Justice Court lawsuit, Plaintiffs vigorously argued as a defense that the Tree Law is unconstitutional on due process, First Amendment, takings, and state law grounds, (*see* Ds' Supp. Ex. E, at 14-21), and asserted that it also "raises equal protection concerns," (*id.* at 10-11). The parties discussed these defenses at oral argument before the Justice Court on November 22, 2011. (*See, e.g., id.* Ex. F, at 11 (discussing takings, due process, and equal protection defenses); *id.* at 34 (discussing ripeness of takings, due process, and equal protection defenses); *id.* at 36 (discussing First Amendment defenses).) After the Justice Court found the Tree Law to be unconstitutional – presumably because it was not "necessary to secure the health, safety and welfare of [the Village's] residents," (*id.* Ex. A, at 6; *see id.* at 5) – the Village appealed the decision and the parties briefed the federal constitutional (due process, equal protection, takings, and First Amendment) and state law issues for the Appellate Term.[21] (*See* Ds' Supp. Exs. B-D.) Thus, Plaintiffs clearly had an opportunity to raise these constitutional issues in the pending state proceeding and availed themselves of that opportunity such that the third *Younger* prong is satisfied.[22] *See Parent*, 2012

---

[21] All briefing before the Appellate Term was complete as of June 22, 2012, and the parties are waiting for the court to set an oral argument date. (*See* Ds' Supp. 1.)

[22] In Plaintiffs' Supplemental Briefing submitted to this Court on July 30, 2012 ("Ps' Supp."), (Doc. 47), Plaintiffs assert that *Younger* abstention is inappropriate because both the Justice Court and the Appellate Court cannot "provide Plaintiffs with redress to the federal law wrongdoing." (Ps' Supp. 2.) Yet Plaintiffs provide no explanation – and the Court can find no apparent reason (apart from the damages issue discussed below) – as to why they cannot obtain the relief they seek in the state court proceedings, at least as far as equitable relief is concerned. *See Parent*, 2012 WL 2213658, at *2 (plaintiff "has not demonstrated that the state courts are an inadequate forum for raising his constitutional claims. Indeed, it appears that [plaintiff] has repeatedly raised his constitutional claims

WL 2213658, at *2 (third prong met where plaintiff raised his constitutional claims in state

court); *McGRX, Inc. v. Vermont*, 452 F. App'x 74, 74-75 (2d Cir. 2012) (summary order)

(holding that "*Younger* clearly applies" where plaintiff would have opportunity to raise federal

claims in state court action).[23]

---

before the state courts, albeit without receiving any favorable decisions. However, simply because the state courts have not issued decisions in his favor does not render them 'inadequate' for purposes of *Younger* abstention."); *Hansel*, 56 F.3d at 394 ("So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes.").

[23] In order for a state court to provide a "meaningful opportunity for review" of Plaintiffs' claims, the claims presented to each court must be the same. *Hartford*, 380 F.3d at 101 (declining to abstain because "the constitutional claims in the state and federal actions [we]re . . . quite different"). Here, Plaintiffs assert as federal constitutional defenses in state court the same federal constitutional claims they raise in federal court, and I find that the issues in both actions are essentially identical. First, as to Plaintiffs' takings claims, while Defendants argue on appeal to the Appellate Term that Plaintiffs abandoned their takings claims during oral argument before the Justice Court, (Ds' Supp. Ex. D, at 8), it is far from clear that Plaintiffs indeed abandoned those claims, (*see id.* Ex. F, at 14 (ambiguous as to whether Plaintiffs' counsel was answering in the affirmative the Justice Court's question about pursuing the takings claim or the question about whether Plaintiffs were challenging the entire statute)), and therefore I find that the Appellate Term could provide meaningful review of those claims.

Second, while in the federal action Plaintiffs challenge the constitutionality of the Consultant Fee Regulations under the due process and equal protection clauses, whereas in the state action they challenge those Regulations under the takings clause (although the Consultant Fee Regulations are in fact mentioned in the due process section of Plaintiffs' Appellate Brief (*see, e.g.*, Ds' Supp. Ex. C, at 17-18)), (*compare* Ds' Supp. Ex. C, at 30, *with* SAC ¶ 108), I find the distinction to be meaningless in the circumstances for a number of reasons. First, the substance of the challenges to the Consultant Fee Regulations in both the state and federal court actions is essentially the same: in both actions Plaintiffs take issue with the magnitude of the fees and the process through which they are imposed. (*See* SAC ¶¶ 41-43; Ds' Supp. Ex. C, at 18, 30.) Second, the due process and equal protection challenges to the Consultant Fee Regulations are articulated in the federal action in only one sentence, with little underlying support. (*See* SAC ¶ 108 (one general sentence describing challenge to Consultant Fee Regulations); *see also id.* ¶¶ 41-43, 56 (minimal factual allegations supporting challenge to Consultant Fee Regulations).) Therefore, what appears to be slapdash labeling of the challenges will not save Plaintiffs' claims from abstention where the substance of the claims is the same. Moreover, Plaintiffs' counsel even admitted in correspondence to this Court that "Mr. Novie's Justice Court challenge to the Tree Law [i]s for the most part the same as in this Court." (Doc. 32.) Accordingly, inarticulate, unspecific, or inconsistent pleading will not save Plaintiffs' claims from abstention.

Finally, even if I were not required to abstain from deciding Plaintiffs' due process and equal protection challenges to the Consultant Fee Regulations, these claims would fail. As an initial matter, to the extent that Plaintiffs' due process and equal protection claims overlap with their takings claim – such that Plaintiffs may be said to be seeking damages for these violations, and therefore they are not subject to abstention – these claims would be subject to dismissal under the ripeness doctrine articulated in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), as discussed below. *See Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order).

With regard to the merits of these claims, as to the equal protection claim, Plaintiffs allege essentially no facts in support of this claim, and certainly none that would render an equal protection challenge to the Consultant Fee Regulations plausible. Any such allegations are purely speculative and conclusory. As to the due process challenge,

While abstention appears to be proper – and Plaintiffs have not demonstrated that an exception to the *Younger* doctrine applies,[24] – courts in this Circuit have held that abstention is generally not appropriate in cases seeking damages pursuant to 42 U.S.C. § 1983 ("Section

---

to the extent that Plaintiffs allege that consulting fees were assessed without adequate process, (*see* SAC ¶¶ 41, 41b), this claim fails because adequate process exists for challenging the fees – namely, the option to bring an Article 78 proceeding, (*see id.*; Marzolla Reply Aff. Ex. A, § 65-6 ("Any applicant who disputes any fee statement presented to him pursuant to this chapter may bring a proceeding in the Supreme Court of the State of New York . . . pursuant to Article 78 . . . within 30 days after presentation of such disputed fee statement.")). That Plaintiffs chose not to avail themselves of that procedure in the proper forum (state court) when presented with the fee statements bars them from now asserting that they did not receive due process of law. *See N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001) ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (internal quotation marks omitted); *Clark v. DiNapoli*, No. 09-CV-1037, 2011 WL 4901330, at *10 (N.D.N.Y. Oct. 14, 2011) (same); *see also Brown v. City of N.Y.*, No. 10-CV-3104, 2011 WL 6003921, at *14 (S.D.N.Y. Nov. 30, 2011) ("Even if plaintiff enjoyed a protectable constitutional interest in his . . . employment, he did not challenge his termination in a New York state-court proceeding under Article 78. Courts in this Circuit recognize such proceedings as sufficient to protect an aggrieved party's right against constitutional deprivations without due process of law.") (internal citation omitted).

One could imagine a scenario where a Village resident challenged a fee statement in an Article 78 proceeding within thirty days of receiving the statement, but because "[t]he commencement of [the Article 78] proceeding [did] not stay the obligation . . . to pay [the] fee statement," (Marzolla Reply Aff. Ex. A, § 65-6), he or she became obligated to pay the fees – and possibly faced a lien on his or her property, (*see id.* § 65-7) – prior to any action in the Article 78 proceeding. In such a situation, that resident might have a viable due process claim, given that a deprivation would occur prior to the opportunity to be heard. On the other hand, the resident could seek a stay from the Article 78 court. I express no opinion on that matter, however, because it is undisputed that Plaintiffs did not challenge the fee statements through the procedures provided, and in fact, signed agreements with the Village agreeing to pay such fees. (*See* Marzolla Aff. Exs. F-G.) Accordingly, their procedural due process claim also fails on the merits. To the extent Plaintiffs purport to raise a substantive due process challenge to the Consultant Fee Regulations, such a claim would also fail, as Plaintiffs have not pleaded any facts that would render plausible an interpretation of the Consultant Fee Regulations as "so outrageously arbitrary as to constitute a gross abuse of governmental authority" and "so egregious, so outrageous, that [they] may be fairly said to shock the contemporary conscience." *Ruston v. Town Bd. for Town of Skaneateles*, No. 06-CV-927, 2009 WL 3199194, at *5-6 (N.D.N.Y. Sept. 30, 2009) (internal quotation marks omitted).

[24] As the Second Circuit recently explained, "[t]here are . . . two 'tightly defined exceptions to the *Younger* abstention doctrine,' the 'bad faith' exception and the 'extraordinary circumstances' exception.'" *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16, 18 (2d Cir. 2012) (summary order) (internal citation omitted) (quoting *Diamond*, 282 F.3d at 197-98). Plaintiffs argue only that the former applies in this action. (*See* Ps' Mem. 4.) Plaintiffs bear the burden of establishing this exception, *see Diamond*, 282 F.3d at 198, and to do so, they "must show that the party bringing the state action [has] no reasonable expectation of obtaining a favorable outcome, but rather brought the proceeding with a retaliatory, harassing, or other illegitimate motive." *Jackson Hewitt*, 455 F. App'x at 18 (alteration in original) (internal citation and quotation marks omitted). Here, Plaintiffs broadly assert that the bad faith exception applies, stating that "the code enforcement prosecution was brought in bad faith motivated by discrimination and a desire to harass." (Ps' Mem. 3-4.) Yet the SAC and Plaintiffs' Memorandum are devoid of facts or even allegations that would plausibly show that the code enforcement proceeding was brought in bad faith. To the contrary, the record indicates that Defendants brought the proceeding based on Plaintiffs' repeated violations of the Tree Law, and did not lack a "reasonable expectation of obtaining a favorable outcome." *Jackson Hewitt*, 455 F. App'x at 18.

25

1983"). *See Morpurgo v. Inc. Vill. of Sag Harbor*, 327 F. App'x 284, 286 (2d Cir. 2009)

(summary order) (district court properly found *Younger* requirements were met and abstained

from exercising jurisdiction over claims seeking injunctive relief, but "erred in abstaining from

exercising jurisdiction over plaintiff's claims for monetary damages"); *Rivers v. McLeod*, 252

F.3d 99, 101-02 (2d Cir. 2001) (*per curiam*) ("[T]he *Younger* doctrine is inappropriate where the

litigant seeks money damages for an alleged violation of § 1983 . . . ."); *Bobrowsky v. Yonkers*

*Courthouse*, 777 F. Supp. 2d 692, 709 (S.D.N.Y. 2011) ("The Second Circuit has held that

*Younger* is inapplicable to § 1983 claims seeking money damages, but *Younger* abstention

continues to apply to claims for injunctive relief brought pursuant to § 1983."); *but see Kirschner*

*v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("The Supreme Court has declined to reach the

issue [of] whether *Younger* applies to claims for money damages . . . .").

      Here, Plaintiffs bring all of their constitutional claims pursuant to Section 1983 but seek

monetary damages only for "loss of use of [Plaintiffs'] real property" and "for the regulatory

taking of their real property." (SAC 25-26.) Thus, abstention is appropriate as to all of

Plaintiffs' claims that are also raised in the state proceeding, except for their takings claim for

damages, which I address below. Accordingly, I abstain from exercising jurisdiction, *see Parent*,

2012 WL 2213658, at *2 (district court lacks jurisdiction over claims dismissed pursuant to

*Younger* abstention), over Plaintiffs' due process, equal protection, and First Amendment claims;

their takings claims for declaratory and injunctive relief; and their state claims,[25] except for their

nuisance and Article 78 claims, and dismiss those constitutional and state law claims without

---

[25] Plaintiffs have presented to the Appellate Term their arguments that the Tree Law is *ultra vires* and exceeds the
authority granted to the Village in the New York Constitution and the General Municipal Law § 96-b. (*See* Ds'
Supp. Ex. C, at 16-17, 20-23.) Accordingly, I abstain from exercising jurisdiction over these claims. In any event,
as discussed below, I would decline to exercise supplemental jurisdiction over the state claims in the absence of
surviving federal claims.

prejudice, *see Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002) (*per curiam*) ("absent

jurisdiction federal courts do not have the power to dismiss *with prejudice*") (emphasis in

original) (internal quotation marks omitted); *Howard v. Koch*, 575 F. Supp. 1299, 1304

(S.D.N.Y. 1982) (dismissing claims without prejudice on *Younger* abstention grounds); *but see*

*Brims v. Ramapo Police Dep't*, No. 11-CV-712, 2011 WL 7101233, at *6 (S.D.N.Y. Dec. 23,

2011) (dismissing with prejudice claim barred by *Younger* abstention); *Warburton v. Goord*, 14

F. Supp. 2d 289, 297 (W.D.N.Y. 1998) (dismissing with prejudice claims barred by *Younger*

abstention and *Rooker-Feldman* doctrines).

       b.    <u>Takings Claims</u>

      Ripeness is a jurisdictional inquiry antecedent to a Court's ability to hear claims. *See*

*Vandor*, 301 F.3d at 38. "The ripeness doctrine is especially important in land use and zoning

disputes which are quintessential local issues that . . . are properly left in the first instance to

local bodies that are better equipped than federal courts to address and resolve such issues."

*Caldarola v. Town of Smithtown*, No. 09-CV-272, 2010 WL 6442698, at *7 (E.D.N.Y. July 14,

2010) (report and recommendation, adopted in full, 2011 WL 1336574 (E.D.N.Y. Apr. 4, 2011))

(internal quotation marks omitted). "[F]ederal takings claims are not ripe unless (1) the agency

involved has reached a final decision and (2) the plaintiff has sought and has failed to receive

adequate compensation through available state procedures." *Adrian v. Town of Yorktown*, 341 F.

App'x 699, 700 (2d Cir. 2009) (summary order) (citing *Williamson*, 473 U.S. at 190-95).

      As to the first prong, before any land use dispute – whether brought as a takings, due

process, equal protection, or to some extent a First Amendment claim – is ripe for review,

Plaintiffs must satisfy the finality requirement of ripeness. *Lost Trail*, 289 F. App'x at 444;

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005); *Caldarola*, 2010 WL

6442698, at *7.  Under *Williamson*, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson*, 473 U.S. at 186.  Ripeness "reflects the judicial insistence that a federal court know precisely how a property owner may use his land before attempts are made to adjudicate the constitutionality of regulations purporting to limit such use."[26]  *Murphy*, 402 F.3d at 349.  As such, the finality requirement is not met if plaintiffs have not sought, for example, a variance or a waiver of the regulations.  *See Williamson*, 473 U.S. at 193-94; *Murphy*, 402 F.3d at 348; *Rivendell Winery, LLC v. Town of New Paltz*, 725 F. Supp. 2d 311, 318 (N.D.N.Y. 2010).  Plaintiffs need not, however, apply for a variance or exception from the regulations if such action would be futile.  *See Murphy*, 402 F.3d at 349.  The futility exception applies only when the relevant agency "lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.*  "[M]ere doubt" that variance applications will be denied is insufficient to invoke the futility exception. *Rivendell Winery*, 725 F. Supp. 2d at 319.

---

[26] The Second Circuit's explanation of the underpinnings of the finality requirement is particularly apt here:

> Four considerations . . . undergird [the finality prong of the ripeness inquiry].  First, . . . requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.  Second, . . . only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel.  Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes.  Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible.  Finally, . . . courts have recognized that federalism principles also buttress the finality requirement.  Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

*Murphy*, 402 F.3d at 348 (internal citations omitted).

Plaintiffs appear to assert three variations of a takings claim.  They allege that Defendants effected (1) "a *de facto* temporary taking of real property by preventing the reasonable removal of trees so that a homeowner can . . . create a back yard," (SAC ¶ 89); (2) a permanent taking by "deeming trees located upon Plaintiffs' property as Village property which the Plaintiffs cannot use or remove without Village permission," (*id.* ¶ 91); and (3) a taking of Plaintiffs' Property without due process of law by taking money from Plaintiffs' mortgage lender in connection with the imposed consultant fees, (*id.* ¶ 94).  I consider only the first two theories because Plaintiffs seek damages solely for a taking of their real property.  (*See id.* at 25-26.)  Similarly, to the extent these various theories encompass a facial challenge to the Tree Law (which is not clear from Plaintiffs' papers), (*see id.* ¶¶ 89, 92), because Plaintiffs appear to seek damages only in connection with the manner in which the Tree Law was applied to their Property, I abstain from considering any facial takings claims.

Plaintiffs' as-applied takings claim concerning the 2009 and 2010 Cuttings is not ripe because a final decision was not reached as to how the Tree Law would be applied to their land. More specifically, Plaintiffs did not avail themselves of the Village's process by which they could seek a retroactive exception to the Tree Law – a process I find sufficiently analogous to seeking a variance.  *See Easton LLC v. Inc. Vill. of Muttontown*, No. 11-CV-4791, 2012 WL 1458211, at *6 (E.D.N.Y. Apr. 27, 2012) (hardship exception, which allowed plaintiff to apply for exemption from subdivision moratorium, akin to a variance); *cf. Murphy*, 402 F.3d at 353 ("[T]hrough the variance process local . . . authorities function as 'flexible institutions; what they take with the one hand they may give back with the other.'") (quoting *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S 340, 350 (1986)).

In 2009, Plaintiffs cut down trees on their Property without a permit but did not challenge the enforcement of the Tree Law against them and instead chose to settle the matter. (*See* Marzolla Aff. Ex. D.) In 2010, they applied for a permit to cut more trees. (*Id.* Ex. E.) That permit was granted as to some of the trees, (*id.*), but Plaintiffs exceeded the limits imposed by the permit. After they were served with a Notice of Violation for excessive tree removal on August 17, 2010, Plaintiffs applied for a retroactive exception from the Tree Law pursuant to sections 176-6(B)(2) and 176-6(D) of the Tree Law.[27] (Ds' Supp. Ex. B, at 9 (Plaintiffs "sought to stay enforcement of the [Tree Law] violation by applying to the Planning Board for an exception . . . for having exceeded the permitted approval for tree removal.").)[28] As part of the

---

[27] Section 176-6(B)(2) provides in relevant part: "In the case of removal without a permit, independent proof (such as a photograph, police report or arborist's certification) is required in accordance with § 176-6D, Exceptions, in order to obtain approval from the Planning Board excepting said person from the regulations contained herein." General Code of the Village of Montebello, New York, Ch. 176, *available at* http://www.ecode360.com/8769464.

Section 176-6(D) holds:

> Exceptions. Upon written application to the Planning Board, and after payment of a permit fee set by the Board of Trustees by resolution, the Planning Board may, by resolution, grant an exception from any of the requirements of this chapter. The decision by the Planning Board shall be made within 30 days of receipt of the request or at the next regularly scheduled Planning Board meeting if not within 30 days. The Planning Board may grant such exceptions from the requirements of this chapter as may be reasonable and within the purposes and intent of this chapter if the enforcement of one or more of the provisions is impractical or will exact undue hardship because of peculiar conditions pertaining to the property in question but, in so granting, may require that a compensatory planting or compensatory payment be made. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant.

*Id.*

[28] The relevant facts regarding Plaintiffs' pursuit of an exception are taken from Defendants' submissions to the Appellate Term. Plaintiffs have not, however, either in their state or federal court papers, challenged these facts or indicated why their claims are ripe under the *Williamson* doctrine. In any event, even if I disregarded the undisputed statements in Defendants' brief to the Appellate Term, the record would still be devoid of any indication that Plaintiffs pursued the exception process to a final decision. Plaintiffs appear only to take issue with the cost involved in the Village's requirements for applying for an exception to the Tree Law, (*see* Ds' Supp. Ex. C, at 8 ("The 'remediation plan' and 'compensatory planting' provisions listed under § 176-7(C) and (D) – which are being required of Respondent Novie, notwithstanding the absence of any Justice Court conviction – impose substantial additional expense")), but the fact that seeking an exception or a variance to a land use law may be expensive does not relieve Plaintiffs from pursuing that process prior to bringing a federal lawsuit for a takings violation, *see Kittay v. Giuliani*, 112 F. Supp. 2d 342, 350 (S.D.N.Y. 2000) (rejecting argument that pursuing variance or approval would

process for obtaining an exception, Plaintiffs attended a Planning Board meeting on September 14, 2010, at which Plaintiffs and the Planning Board agreed that as part of Plaintiffs' application, Plaintiffs would create a comprehensive tree remediation plan and survey with topographic information. (*Id.* at 12-13.) The matter was then adjourned until the November 9, 2010 Planning Board meeting. (*Id.*) It appears – and Plaintiffs do not allege otherwise – that shortly thereafter, Plaintiffs abandoned their application for an exception by not appearing with the requested documents at the November 9th meeting. (*Id.* at 13.) Thus, because there is no indication in the record that Plaintiffs fully pursued an exception to the Tree Law for the 2009 and 2010 Cuttings, their takings claim is not ripe. *See Kittay*, 112 F. Supp. 2d at 349 (claim not ripe where plaintiff "failed to obtain a final    . . . decision concerning the applicability of the . . . Regulations . . . to its property and, in effect, invites th[e] Court to address important and potentially complex constitutional and regulatory issues in a vacuum"); *Hunter v. Town of Chili, N.Y.*, No. 09-CV-6285, 2010 WL 598679, at *2 (W.D.N.Y. Feb. 18, 2010) (claim not ripe where plaintiff failed to allege that he undertook appeal of decision denying his request for fill permit pursuant to town regulations).[29]

    Further, even if a final decision was reached as to the use of Plaintiffs' Property, their takings claims are unripe under the second *Williamson* prong because Plaintiffs have not alleged that they availed themselves of state procedures that could provide them with adequate compensation. *See Williamson*, 473 U.S. at 194 ("The Fifth Amendment does not proscribe the taking of property; it proscribes the taking without just compensation."). "As long as the State

---

have been futile and noting that plaintiff may not "maintain an otherwise premature lawsuit on the grounds of financial hardship"), *aff'd*, 252 F.3d 645 (2d Cir. 2001) (*per curiam*).

[29] Nor have Plaintiffs demonstrated that pursuing that process would be futile. They point to no action by the Village that prevents the exception process from continuing.

has a 'reasonable, certain and adequate provision for obtaining compensation,' an aggrieved

party must obtain recourse through that means before bringing a takings claim in federal court."

*R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 449 (S.D.N.Y. 2003) (quoting

*Williamson*, 473 U.S. at 194). Indeed, New York has such procedures, *see Vandor*, 301 F.3d at

39 (takings claim unripe because plaintiff failed to bring Article 78 proceeding; "under New

York State law, Article 78 is a form of proceeding available to compel public officials to comply

with their responsibilities" and is "constitutionally sufficient"); *R-Goshen*, 289 F. Supp. 2d at

449 (discussing provisions of New York State Constitution and Eminent Domain Procedure Law

that would satisfy second *Williamson* prong),[30] but Plaintiffs failed to pursue them. Likewise,

with regard to their challenges to the Consultant Fee Regulations, Section 65-6 of the Village

Code[31] provides that Plaintiffs could have challenged the imposition of fees via an Article 78

proceeding, but Plaintiffs failed to avail themselves of that opportunity. Thus, Plaintiffs' takings

claim would also fail under the second prong of the *Williamson* doctrine.

Accordingly, Plaintiffs' takings claim regarding the 2009 and 2010 Cuttings fails on

ripeness grounds and is "dismissed without prejudice to refiling if and when Plaintiffs take the

requisite actions necessary to make the claim ripe for review on the merits." *TZ Manor, LLC v.*

*Daines*, 815 F. Supp. 2d 726, 735 (S.D.N.Y. 2011); *see Country View Estates @ Ridge LLC v.*

*Town of Brookhaven*, 452 F. Supp. 2d 142, 144 (E.D.N.Y. 2006) (dismissing claims without

prejudice on ripeness grounds).[32]

---

[30] The New York State Constitution provides that "[p]rivate property shall not be taken for public use without just compensation." N.Y. Const. art. 1, § 7(a).

[31] *See* General Code of the Village of Montebello, New York, Ch. 65, *available at* http://www.ecode360.com/8767126.

[32] While in some instances entering a stay of Plaintiffs' claims for monetary damages would be a proper course of action, *see Kirschner*, 225 F.3d at 238 ("The Supreme Court has declined to reach the issue whether *Younger* applies

c.    State-law claims

Plaintiffs' remaining claims – their common law nuisance claim and Article 78 claim –

were not explicitly raised in the state-court proceeding, and therefore I need not abstain from

exercising jurisdiction over them.  Nonetheless, the "traditional 'values of judicial economy,

convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental

jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian*

*Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.

343, 350 (1988)).  Having determined that all of the claims over which this Court has original

jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiffs'

remaining state-law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).[33]  Accordingly,

these claims are dismissed without prejudice.

---

to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding."); *Sorokin v. Dow Jones & Co. Inc.*, No. 11-CV-839, 2011 WL 1458592, at *6 (S.D.N.Y. Apr. 11, 2011) ("*Younger* abstention does not allow for the dismissal of a claim for money damages, although a stay for a damages claim may be appropriate, pending resolution of the state court proceeding."); *Rodgers v. Cartagena*, No. 10-CV-9285, 2011 WL 724680, at *1 (S.D.N.Y. Feb. 25, 2011) (staying claim for damages where proceeding with case in federal court would interfere with ongoing state proceeding); *Broadway 41st St. Realty Corp. v. N.Y. State Urban Dev. Corp.*, 733 F. Supp. 735, 744-45 (S.D.N.Y. 1990) (abstaining under *Younger* from considering plaintiffs' takings claims and thus declining to "consider plaintiffs' requests for damages on the theory of the *de facto* takings doctrine," and "plac[ing] [*de facto* takings claims for monetary relief] on the suspense calendar pending completion of the state court . . . proceedings"), but because Plaintiffs' takings claims are not ripe, I lack subject matter jurisdiction over these claims and therefore also lack grounds on which to enter a stay, *see Country View Estates*, 452 F. Supp. 2d at 144 (dismissing unripe claims without prejudice rather than staying the case and explaining, "[i]f the case is not ripe, there is no subject matter jurisdiction, and thus no basis to issue a stay").

[33] I cannot in any event exercise jurisdiction over Plaintiffs' Article 78 claim. *See Bender v. City of N.Y.*, No. 09-CV-3286, 2011 WL 4344203, at *10 (S.D.N.Y. Sept. 14, 2011) (Article 78 proceedings "must be brought in the supreme court of the relevant county [of New York]. Federal courts lack jurisdiction to hear such claims."); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) ("New York State has not empowered the federal courts to consider [Article 78] claims.").

IV.    **Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend is GRANTED IN

PART and DENIED IN PART, and Defendants' Motion to Dismiss is GRANTED.  All of

Plaintiffs' claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to

terminate the pending Motions, (Docs. 16, 39, 48-50), and close the case.

**SO ORDERED.**

Dated: August 16, 2012
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

34